Good morning, Your Honors. May it please the Court, Jeffrey Isaacs on behalf of Plaintiff Appellant Antwon Jones. I'm also here with my partner, Adam Cardman, and we would ask to reserve five minutes for rebuttal. At your clock, please. Thank you, Your Honor. What we're dealing with is a classic backward-looking denial of access case. In this case, in December of 2014, the City of Los Angeles and a New York attorney named Paul Paradis entered into a conspiracy, which has now been determined to be a criminal conspiracy, that included using Mr. Jones, who was Mr. Paradis' client at the time, as a sham plaintiff in sham litigation that would be brought to benefit the city and not Mr. Jones. And that conspiracy then beget two separate schemes, one which was called the Parallel Litigation Scheme, which never came to fruition, and the other, which we call the White Knight Scheme, which did. Now, the city, as we allege, and submitted substantial evidence, the city engaged in a cover-up of the existence of the conspiracy and these schemes that began in December of 2014. This is documented extensively in the factual bases of plea agreements entered into by Mr. Paradis and by a gentleman by the name of Tom Peters, who was the deputy for civil litigation in the city attorney's office during this period. Forgive me for interrupting. It's an extraordinary case, but we've read the briefs very carefully and I worry about your time. Thank you, Your Honor. Well, then I'll move forward. Did the district court assume that your client had notice of everything, at least by the time the Kiesel deposition transcript was received? The court assumed that Mr. Jones had notice as of June of 2019, which is when he reviewed the Kiesel testimony. That's a yes? Yes. Okay. So, and I think that's right, certainly by that date. So, are you contesting that date? No, we're not. We're contesting is that Mr. Jones' or Mr. Paradis' representation of Mr. Jones ended in March of 2015 and that there was no willful concealment by Mr. Paradis beyond March of 2015. How was there not willful concealment? Because there was no further communication or engagement by Mr. Paradis with Mr. Jones after March of 2015. Does your argument about willful concealment depend upon, I think your position in your briefing is that it had to be actions that Mr. Paradis took or, you know, to conceal from your client? There has to be, we take the position some type of affirmative misrepresentation to Mr. Jones or at least some type of action. It cannot be not just non-disclosure. And those are the cases that we cite. What's the strongest case for the notion, I mean, certainly intentional misrepresentation would suffice, but what is the strongest case in support of your argument that willful misrepresentation is required? The Nielsen case, Your Honor, which is an unpublished case, but the district court accepted it as instructive. But also there's the Koch case, the case is decided under the similar civil code of, the code of civil procedure 340.5, which has to do with medical malpractice and intentional concealment. And then there's the authoritative treatise of Mallin. But there's also the California Supreme Court cases about the legislative history and the policy of 340.6 and these tolling provisions, which was to try to eliminate uncertainty. If there was, if you allow non-disclosure to be the rule for willful concealment, then there would be no end to the statute of limitations. So would we be here if you had filed within six months of the government's denial of the claim against the city? We would, we would still be here, Your Honor, because that only had to do with the government claims, which we are not pursuing, or the claims against the, sorry, claims against the city, which we are not pursuing. It would still not change anything as to the claims against Mr. Paradis, which Mr. Jones had, and those are the ones that are at issue now. And then let me just jump ahead then to the district court's order. First, the district court assumed, actually said that Mr. Paradis's wrongful act occurred in December of 2014, and that we contend is correct, that that is when the conspiracy was entered into. But our position is a little bit different than what the city said, which is that it's not enough that there was just a conflict of interest that was revealed later in Mr. Jones's deposition in February of 2019, but that there actually was no evidence relating to the conspiracy and the schemes that came out of that conspiracy. And as the Jordache, California Supreme Court said in the Jordache case, it is not enough to have an ethical violation as a basis for a cause of action. You need more, and the more in this case was the conspiracy and the schemes that followed from it, using Mr. Jones as a sham litigant in them. The district court also concluded that the four-year limitations period controlled here, I'm quoting from the district court's decision, and if the court thus assumes that the accrual date of December 2014, the four-year limitation period expired in December 2018. The district court also assumed without deciding that Mr. Jones first learned of his claims against Paradis in June of 2019. In addition, the district court found that there was a disputed material fact as to whether the parties, or as to whether Mr. Paradis's attorney-client relationship, when it ended with Mr. Jones. And the district court did not reach that issue, said it need not address tolling under a continued representation theory. So at the end of the day, the district court based its decision granting summary judgment on a very narrow issue, which was the willful concealment. And in particular, it cited two acts as satisfying that requirement. The first was Mr. Paradis, Mr. Paradis's omission of his name from the caption page in the Jones versus city complaint that he Now there's several problems with that. First, that it doesn't really help the city in its argument, because that would have been in March of 2015, and adding four years would have taken us to March of 2019. But Mr. Jones did not have notice until June of 2019, so it does not extend the statute of limitations or toll the statute of limitations to sufficiently for purposes of granting summary judgment. The other problem was that this didn't conceal anything from Mr. Jones. He already had a copy of that complaint. It was sent to him by Mr. Paradis at the end of March of 2019, which did list Mr. Paradis as counsel of record. And this sort of gets to the, I think, fundamental problem with the district court's reasoning is that that action and the second act, which I'll get to in a second, was really all about trying to conceal or cover up what was going on, not from Mr. Jones in this regard, but from PricewaterhouseCoopers and the court, the Superior Court Judge Burrell. So that's what I was asking you about earlier, though. It seems to me that the whole thing was a house of cards, and the city's argument is going to be that the actions that Mr. Paradis took to conceal his relationship, really his dual relationship, can't be separated one from the other. In other words, if Pricewaterhouse had discovered, then your client, in fact, that's what happened. Pricewaterhouse is the one that discovered, and then this all came tumbling down. Why is that insufficient? Well, because it can be separated. And in fact, that's specifically what we allege in the complaint. Mr. Paradis's actions towards Mr. Jones occurred from December of 2014 through the his actions were related to the continuing cover-up, which went well beyond June of 2019, well into 2020. But in terms of analyzing the statute of limitations, we take willful concealment as against Mr. Jones. That's what you keep saying, the facts, sir, and I understand the facts and the chronology, because the briefing is very thorough on this point. I'm trying to figure out why you think there's a legal distinction. Why is it inadequate that if I decide that Mr. Paradis took actions to conceal his role, his duplicitous role here, why do I have to find that those actions were direct communications or failed to communicate directly with Jones as opposed to Pricewaterhouse? Because the statute and the case law says that the concealment must be from the client, not from somebody else. And so I'm not trying to be difficult, but I do want to make sure I give you the benefit of the opportunity to tell me exactly what you're looking at, because I don't see it. Are you wanting to call my attention to Nielsen? Is that your strongest case? Well, it's not just Nielsen, Your Honor. It is, and I'll try to address this quickly. I mean, there's certainly cases, malpractice cases, where there is only one client, you know, there is only one entity. But in this case, as I said, that's why I've used this analogy to a house of cards, it And I think it is an apt analogy, but again, and maybe I'm not hearing you correctly, it still has to be directed towards Mr. Jones as the client. And that's where we also get into the issue of the end of continuing representation, which occurred at the end of March of 2019. After that, Mr. Jones, Mr. Parris had no further communications. Mr. Jones had no communications with Parris. And even according to the city, as they admitted or argued in front of Judge Berlin, the March 2014 hearing, the case had been transitioned from Parris to Lanskroner. And that in fact, the city was arguing then there was no adversity of interest at that time. Can I ask if you seem to be acknowledging that Mr. Parris did take steps to conceal the schemes after March 2015, just not in communications directly with Mr. Jones? That is correct, Your Honor. If Mr. Parris had not taken those steps to conceal the schemes from the court and from other legal representatives, wouldn't that have exposed the scheme also to Mr. Jones? That would be speculation, Your Honor. I mean, it certainly was, there was continuing concealment by Mr. Parris in conjunction with the city and Mr. Lanskroner and Mr. Kiesel and others after March of 2019. But that did not, again, was not directed towards Mr. Jones. And I think the distinction here is between just concealment as a cause of action and willful concealment for purposes of 340.6A3, which has been construed to be fairly narrow for the reasons that otherwise it would expand the statute of limitations without limit, whereas the whole purpose of that statute was to try to bring certainty and a conclusion to the running of the statute of limitations. You wanted to save some time. I would, Your Honor. Thank you. Thank you. Good morning. May it please the court, my name is Katherine McCann, arguing on behalf of the City of Los Angeles. As the court has noted, this is an unusual case. The city did not cause Mr. Jones to lose his right to pursue his claims. Our MSJ was based entirely on admissions made by Mr. Jones. Those admissions were not contradicted below because Mr. Jones knew he could not contradict them below. He tries now to avoid those admissions, but he can't. Regarding the willful concealment and your questions, you're correct. This is a case where the entire theory that Mr. Jones pleads is that there was a massive cover-up to prevent everyone from discovering what was actually going on. The record is replete with admissions that there was a cover-up and that this cover-up was to Mr. Jones. Pursuant to the plain language, it was a judge, it was Price Waterhouse, it was a lot of people. It was the whole Los Angeles County. I agree completely. It was a complete cover-up. Yes, I agree, but if the question is, was there also a cover-up and misrepresentation and willful concealment as to Mr. Jones, there absolutely was, and that's in the record. In addition to... Did he ever argue estoppel, that the city should be estopped? The estoppel argument wasn't raised, and the only time that I believe it's come up is in the filings below when there was the motions to dismiss. So the issue about estoppel, and particularly what I believe counsel is trying to get at right now with some of the arguments that were made before, is that Mr. Parity made a statement before the court that he didn't represent Mr. Jones any further after, I believe it was March of 2015. What opposing counsel fails to state is that in their own FAC, First Amendment Complaint, they state that this was false, and when you look at that filing, this was a filing made by Mr. Parity before he stepped down in furtherance of his conspiracy. I was referring to something else. I was trying to ask, but I didn't do a good job, whether there was ever an argument made that the city should be estopped, because there were city entities that were involved in this cover-up. I apologize for misunderstanding. I wasn't clear. So the issue here is even if there was a cover-up. Counselor, there was a cover-up, right? You're not, please tell me you're not disputing that. No, I'm not disputing that, and we accepted the allegations for the purposes of the MSJ. So even accepting the cover-up, even accepting the allegations, did that prevent Mr. Jones from bringing his claims timely, and it did not. I understand the legal argument. What I'm trying to ask you is whether anyone ever argued that the city should be estopped from making this argument, that the statute of limitations is true. I do not believe that that is the case. Thank you. And I would say that I do not believe that that is the law, that there's anything here that would estop the city from making this argument. If it wasn't raised, I don't need to pursue it. I might beg to differ with you on that point, but we don't need to explore it if it wasn't raised. I'm just going to go back quickly. So regarding willful concealment, opposing counsel just raised several cases. I'd like to first note that the actual statute itself, 340.6, does not state that there needs to be an affirmative misrepresentation. It merely states that there needs to be willful concealment. The cases that have cited also do not state that there has to be affirmative misrepresentation. If there is affirmative misrepresentation, that is one way to show that there's willful concealment. But none of the cases have said the only way to do it is affirmative misrepresentation. So what we have here is a requirement that someone, an attorney, do more than simply not disclose, do more than simply sit on the facts. And as your honors have noted, the record is sit on the facts and not disclose them to his client. He engaged in affirmative and willful concealment. Jones admits in his First Amendment complaint, specifically to many things, but I think importantly, that Parody brought Lance Kerner in because as counsel of record, Parody could not appear as counsel of record for Mr. Jones in the Jones v. City case. And he brought in Lance Kerner to address this problem. Additionally, he willfully concealed this, that he was representing the city and was not colluding with Lance Kerner. The fact that Parody's name was not on that complaint was an affirmative act of willful concealment. He now claims that this concealment was only of the dual representation. I agree that this cannot be separated. This was a house of agreement falling down as soon as you expose a dual representation. And in the First Amendment complaint, plaintiff admits that had that relationship come to light, this would expose the collusive nature of the settlement. And of course, that's exactly what happened. I would also like to note that we have facts in the record. Excuse me. The fact that it seems like this dual representation is being downplayed, again, this forms a basis for at least two of the causes of action in the First Amendment complaint. So you cannot separate them. And even if you could separate them, you cannot downplay the conflict of interest. Regarding the issue of continued representation, again, this is not what the district court relied on, but this court can also look to this. Jones, again, admits that there's no genuine dispute of fact here about the continued representation. Representation ends when a client actually or reasonably has no expectation that the attorney will provide further legal services. An attorney cannot simply end his relationship with the client by ceasing to act. Essentially, what the argument here is put forth by Mr. Jones is that you can bring on another lawyer, tell your client this lawyer is going to help me in the case, going to work with me, he's going to be part of the team, and then that first lawyer can simply fade away and avoid all liability later. This is not the law and it cannot be the law. The court in Nielsen v. Beck, which is a different Nielsen from the unpublished case, that's 157 Calap 4, 1041, notes that the reason we have this objective standard is because examining the evidence through the eyes of the client is appropriate because otherwise an attorney could abandon a client without the client's knowledge and yet escape a malpractice suit. The purpose of the rule would be obliterated. Thus, the critical injury in abandonment cases is when the client actually or reasonably should have no expectation that the attorney will provide further legal services. Based on the facts that are undisputed here and the admissions, any reasonably objective client would have believed that Paradis was still representing him. As I noted, Paradis told Jones he was bringing in another lawyer, not replacing himself with another lawyer. Jones reached out to both Paradis and Lance Croner when he thought his power was being shut off. In the deposition, Jones was clear that, as far as he was concerned, he never terminated his relationship with Paradis and Paradis never terminated the relationship with Jones. Jones now wants to point to other statements in testimony in that deposition to try and create an issue of fact where there is none. Of course, we all know that there has to be a genuine issue of fact. The deposition testimony that Mr. Jones is now trying to rely on is simply testimony that shows that he thought he had two lawyers. He wasn't talking to Paradis after a while. He was talking to Lance Croner, but that doesn't mean that he thought that he didn't have Paradis as his lawyer. Those facts that are pointed to do not create a genuine dispute. We have now gotten to 2019. When was their inquiry notice? The undisputed facts show that this inquiry notice happened as early as February 2019 when the deposition of Mr. Jones happened. What cause of action did he know he had as of February 2019? Your Honor, I'll answer that question in two parts. First, the law does not require him to know he had a complete cause of action. I know what the law is. I'm stating the question loosely, but why do you think the clock started running then? He admits in his declaration that after the That's not a cause of action. That's an ethical problem. It's an ethical problem, but underlying the ethical problem here, the conflict of interest along with the facts that came out at his deposition, which was that Paradis also represented the city, his direct adversary. Paradis drafted a complaint, gave it to Jones, and then had another version of a complaint that everyone was telling— All about dual representation. Those are all ethical conflicts. That's putting him on notice of that, but how does he know that he's got a cause of action? How does he know he's been damaged? I think he has been damaged because he knows—he has an inquiry notice that he should go forward and discover at that point that he knows that his lawyer doesn't just have a conflict of interest, but is using him to get into this other lawsuit. He has drafted complaints, Jones v. PwC and Jones v. the city. He has given them to Mr. Jones. He has told Mr. Jones, don't give this one complaint to anybody. I'm still waiting for you to tell me how he was—how Jones knew at that time he had been damaged, and I'm not quite sure why the city is clinging so hard to this argument about the February deposition notice because the court, right, gave him the benefit of the doubt as of June. Yes. I don't think there's any question as of June when the Kiesel—I don't know if I'm pronouncing that correctly, but the Kiesel deposition transcript, and so on that theory, you know, at that time, the plaintiff still loses. I apologize for being unclear. So it isn't just—I will try to be very succinct. It isn't just my lawyer had a conflict. It's my lawyer had a direct conflict that was against my interests. My lawyer was doing something with me that's against my interests here. What cause of action would he have sued for? What is it he's supposed to have— He did sue for—well, he said he would have sued for breach of fiduciary duty and that this was one of the underlying causes of action. I'm going to find this really quickly for you, Your Honor. Breach of fiduciary duty and concealment. Those are the two causes of action in the first amended complaint that Jones says he would have brought based on this dual representation. That is what I believe he was on—he would have discovered, and again, that's the standard. Did he have enough facts to go and discover this? Was he represented by other counsel at that period of time? Yes, he was represented by Mr. Isaacs. As of June 2019? Yes. And as of February? Yes. At the deposition he was represented? Yes. I would just like to say that we also agree that he was definitely on notice as of June 2019. It's not a conflict of facts whether he was on notice in February or June. I know that's one thing that was raised in the reply that, oh, this must be a conflict that's a there is no tribal issue of fact based on that, those two time periods. So we are just as— But that's why I was pushing a little bit about why are we fighting over February? I don't think you win with more generous interpretation given by the district court. I just want to make sure I'm not missing something. No, we agree that the more generous interpretation as the district court should have given Mr. Jones the benefit of the doubt that here's what happened by June 2019. The reason that I keep coming back to February is because I just want to make it clear that in the opening and reply papers, Jones makes it sound like nothing could have possibly put him on notice as of February. The undisputed facts show that that's not the case. He hasn't actually shown anything that's a genuinely undisputed fact here that would say that he somehow was never on notice at all. He had no reason to look into anything as of February. That is why we raised that, Your Honors. I only have a few seconds left. I think I've addressed everything, and I hope I've addressed your questions. Thank you. Thank you, counsel. Mr. Isaacs? Thank you, Your Honor. Very quickly, as far as counsel's representation that there were undisputed facts, we of course dispute that there were undisputed facts and that these facts are disputed, and I think they're shown by the record, in fact, to be hotly contested. There's my declaration, there's Mr. Jones's declaration, and there's no end of exhibits that show that these issues are. As to Your Honor's question about the cases relating to whether the concealment has to be to the client or can be broader in scope, I would point the panel to Roger Cleveland Golf Company versus Kraus and Smith, which is at 225 Calab 4th, 660, jump site to 679, and there the court said, concealment of a wrongful act or omission in subdivision A3 applies in the context of the attorney-client relationship in which the attorney conceals from his or her client the wrongful act or omission that constitutes a cause of action for legal malpractice. There's also the Nielsen versus Stewart case, that's the unpublished case which specifically says and addresses the fact that the defendant must conceal facts from the which is considered the authoritative treatise on malpractice, California malpractice law, which says the facts concealed are those from which the client could have learned there was a cause of action against the lawyer. And then again, there is the California Supreme Court decisions and legislative history and policy that the whole purpose of 340.6 was to bring certainty and limit what would otherwise be an open-ended statute of limitations for actions against counsel if there was a rule that non-disclosure itself, even if it was a breach of fiduciary duty, could amount to willful concealment for purposes of 340.6 A3. And again, we're talking about two different concepts. One is cause of action or claims and the other is a specific interpretation or how to interpret 340.6 A3, which does not have a lot of case law. And I think both sides have exhausted what is out there about that. In addition, just to focus on for a minute how this whole willful concealment issue arose in the district court, it was not anywhere mentioned in the city's notice of motion. And of course, the motion was brought without the opportunity to conduct any discovery. The district court permitted the city to go forward based on the city's representations about Mr. Jones's deposition testimony. It was not raised in the supporting points and authorities on this point. The argument really wasn't developed until the city's reply. And then in the district court's opinion, it is confined to one paragraph, one footnote at the end of the decision. And as we've pointed out, the district court unfortunately made fundamental mistake and altered an allegation in our first amended complaint by bracketing the incorrect case, which they said was a Jones class action as opposed to Jones versus PWC, the draft complaint. And then the district court based its decision on that altered allegation. There were other problems with the district court's opinion as we decision it on that regard as we point out, but the entire thing is premised on what the district court says was an admission by Mr. Jones, but it was in fact not an admission. It was an altered allegation. In addition, I would just reference the court to or refer the court to the transcript which we put into the record in the district court of the March 4th, 2019 hearing. This is the hearing before Judge Burrell. It's at volume eight of the excerpt of record starting at 1275. And that's where the city represented by Mr. Paradis, Mr. Kiesel, and in fact with their own ethics expert there, was representing to Judge Burrell that Mr. Paradis's representation ended when he and then in fact there wasn't even a conflict of interest because there was no adversity. Now the focus at that time was on something very different and Ms. Buchanan is absolutely right. Later, all those representations were proven to be false, but that wasn't until much later, well beyond in fact the Kiesel deposition testimony when Judge Burrell started holding hearings in the city versus PWC case. And that's why it gets so confusing because we're dealing with different tracks and different cases, but really everything that came out was on the city versus PWC case in which Mr. Jones was a non-party and didn't even know it existed until his deposition was taken in February, 2019. And unless the panel has any other questions, I would submit with that. Thank you, your honors. Thank you, counsel. Jones versus the city of Los Angeles. Okay, this court will be in recess, session of the court will be in recess for approximately 10 minutes. All rise. This court stands in recess for 10 minutes. Thank you.
judges: WARDLAW, CHRISTEN, SUNG